**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| REPSOL, S.A., ) | CASE NO.:  1:12-CV-08799-TPG |
|  ) | ECF CASE |
| Plaintiff, ) | |
|  ) | |
| v. ) | |
|  ) | |
| CHEVRON CORP., ) | |
|  ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CHEVRON CORPORATION'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 6

REPSOL'S CLAIMS ARE NON-JUSTICIABLE UNDER THE ACT OF STATE
        DOCTRINE ......................................................................................................... 6

      A.     Argentina's Expropriation of Repsol's Shares Constitutes an
            "Official Act of a Foreign Sovereign Performed within its own
            Territory" ............................................................................................... 7

            1.     The Challenged Expropriation Plainly was an "Act of
                  State" ........................................................................................ 8

            2.     Argentina's Expropriation of the YPF Shares was within its
                  own Territory ........................................................................... 9

      B.     Adjudication of Repsol's Claims Requires the Court to Rule on the
             Invalidity of Official Acts by the Argentine Government ...................... 12

            1.     Repsol's Complaint is Based on the Alleged Invalidity of
                  Argentina's Expropriation ..................................................... 12

            2.     Repsol's Attempt to Recast its Allegations as Contract-
                  Based Cannot Save its Claims ................................................ 15

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ................................................................................6, 7, 17

*Braka v. Bancomer, S.N.C.*,
  762 F.2d 222 (2d Cir. 1985) ..............................................................................10

*Brias Int'l S.A. et al. v. Repsol, S.A.*,
  Index No. 650018/2013 (N.Y. Sup. Ct. filed Jan. 3, 2012) .................................1

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
  949 F.2d 42 (2d Cir. 1991) ..................................................................................3

*Dayton v. Czechoslovak Socialist Republic*,
  834 F.2d 203 (D.C. Cir. 1987) .............................................................................7

*Ethiopian Spice Extraction Share Co. v. Kalamazoo Spice Extraction Co.*,
  543 F. Supp. 1224 (W.D. Mich. 1982) ...........................................................10, 11

*First Nat'l Bank of Boston v. Banco Nacional De Cuba*,
  658 F.2d 895 (2d Cir. 1981) ...............................................................................16

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*,
  697 F.3d 59 (2d Cir. 2012) ...................................................................................3

*Glen v. Club Méditerranée*,
  450 F.3d 1251 (11th Cir. 2006) ..........................................................................16

*Impregilo S.p.A. v. Pakistan*, I
  CSID Case No. ARB/03/3 (April 22, 2005) .......................................................17

*Kalamazoo Spice Extraction Co. v. Provisional Military Gov't. of Socialist
  Ethiopia*, 729 F.2d 422 (6th Cir. 1984) . No........................................................11

*Konowaloff v. Metropolitan Museum of Art, New York, N.Y.*,
  11-4338-cv, 2012 WL 6573898 (2d Cir. Dec. 18, 2012) ..................................6, 7

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...............................................................................10

*MOL, Inc. v. Republic of Bangladesh*,
  736 F.2d 1326 (9th Cir. 1984) ..............................................................................9

*Ricaud v. Am. Metal Co.*,
  246 U.S. 304 (1918) ..............................................................................................7

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,*
    493 U.S. 400 (1990)..................................................................6, 8, 9, 14, 15, 16

*Waste Mgmt. Inc. v. United Mexican States,*
    ICSID Case No. ARB/00/3 (Apr. 30, 2004) ....................................................17

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
    296 F.3d 1154 (D.C. Cir. 2002)................................................................9, 16

Defendant Chevron Corporation ("Chevron Corp."), by and through its attorneys, respectfully submits this memorandum of law in support of its motion to dismiss the complaint ("Complaint") filed by Repsol, S.A. ("Repsol").

## INTRODUCTION

This is one of at least seven overlapping suits filed by Repsol around the world challenging the nationalization of YPF by the Republic of Argentina ("Argentina"). All of these proceedings have the same fundamental purpose: to invalidate the consequences of Argentina's expropriation of Repsol's interest in YPF or otherwise "compensate" Repsol for Argentina's nationalization of YPF. Rather than simply seek redress against the actual alleged offender, however, Repsol has expanded its attack by suing potential YPF business partners. The instant lawsuit against Chevron Corp. is one such attack. [1]

In addition to this case, Repsol has filed two actions in this Court against Argentina: one alleging breach of YPF's bylaws, and the other alleging violation of U.S. securities laws. Repsol has also brought suit in Argentina regarding the constitutionality of the legislation nationalizing YPF and commenced international arbitration challenging the nationalization of YPF pursuant to the Treaty of Reciprocal Promotion and Protection of Investments between Spain and Argentina ("Argentina-Spain Bi-lateral Treaty") under the auspices of the International Centre for the Settlement of Investment Disputes ("ICSID"). [2] Finally, just weeks before filing this lawsuit,

---

[1] Repsol has stated its intention to bring a similar suit against Bridas International SA in Spain based upon its business relationship with YPF. As a result of Repsol's threats, Bridas recently filed its own declaratory judgment action against Repsol. *See Brias Int'l S.A. et al. v. Repsol, S.A.*, Index No. 650018/2013 (N.Y. Sup. Ct. filed Jan. 3, 2012).

[2] Repsol's investor complaint against host state Argentina was accepted by ICSID on December 18, 2012.

Repsol sued Chevron Corp., Chevron U.S.A., Inc. ("Chevron USA") and now Chevron Argentina S.R.L. ("Chevron Argentina") in Madrid for alleged violations of Spain's unfair competition laws.

Repsol's goal in filing each of these matters is the same: to challenge Argentina's expropriation of YPF. Here, Repsol seeks to void an agreement between YPF and Chevron Argentina concerning the development of certain energy assets located in Argentina, as well as to prohibit other dealings with YPF as long as it remains under the allegedly wrongful control of the Argentine government. To justify this relief, Repsol asserts that Argentina's expropriation violates Argentine and international law, as well as YPF's bylaws, and as a result any action taken by the YPF managers appointed by the Argentine government is *ultra vires* and must be deemed void. Stated another way, Repsol argues that because YPF's managers were appointed as part of an allegedly invalid expropriation, YPF – as long as it remains under Argentine management – should not be permitted to conduct any business with anyone, including Chevron Corp.

Although Repsol's claims against Chevron Corp. lack merit, this Court need not address the merits because Repsol's Complaint is barred by the act of state doctrine, which forbids an American court from adjudicating the validity of an official act of a foreign sovereign within that sovereign's own territory. Repsol's claims are based on the assertion – repeated throughout the Complaint – that Argentina's legislation expropriating YPF shares held by Repsol was wrongful and that, as a result, this Court should declare agreements between YPF and Chevron Argentina void and otherwise preclude business relations with YPF. Granting Repsol's claims therefore would require the Court to invalidate a foreign sovereign's official act within its own territory. This is precisely what the act of state doctrine precludes.

It is clear that the alleged invalidity of Argentina's expropriation is at the heart of Repsol's claims.  Repsol acknowledges that, prior to the expropriation, Repsol "caused" YPF to negotiate with entities including Chevron Argentina regarding potential partnership.  *See* Compl. ¶ 36 (describing such a partnership as "an expedient and efficient means to develop the Energy Assets").  Repsol's true complaint is that now, rather than Repsol driving the discussions, YPF continues to negotiate with potential partners and otherwise conduct its business while majority owned by the Argentine government.  Repsol's allegations of impropriety by the Argentine government in expropriating Repsol's shares and assuming majority control of YPF is appropriately resolved in an action between Repsol and Argentina – as Repsol itself has acknowledged by pursuing a number of  actions against the foreign sovereign, including international arbitration.  Repsol's attempt to increase its leverage against Argentina by suing third parties like Chevron Corp. in impermissible forums such as this one should be rejected.

## STATEMENT OF FACTS[3]

Plaintiff Repsol is a publicly-held limited liability company or "sociedad anonima" organized under the laws of the Kingdom of Spain with its headquarters in Madrid, Spain.

---

[3] The facts set forth herein are taken from the Complaint, from documents incorporated by reference or integral to the Complaint, or from documents with respect to which the Court may take judicial notice.  *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012) (court may consider documents that are attached to the complaint or incorporated in it by reference; court may also consider documents that are "integral to the complaint"); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] ... which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

Compl. ¶ 18.  Defendant Chevron Corp. is incorporated under Delaware law with its

headquarters in San Ramon, California.  Compl. ¶ 19.

Non-party YPF is an oil company organized under the laws of Argentina and based in

Buenos Aires, Argentina.  Compl. ¶ 22; Declaration of Jessica L. Margolis ("Margolis Decl."),

Ex. A at 3.  Prior to 1992, YPF was Argentina's state-owned oil company.  Compl. ¶ 22.  In

1992, Argentina privatized YPF through an initial public offering ("IPO").  *Id.*  As part of the

IPO, shares of YPF Class D stock were sold directly in Argentina and traded on the Buenos

Aires Stock Exchange ("BCBA").  In addition, American Depository Shares ("ADS") tied to the

value of YPF Class D stock were sold internationally.  Compl. ¶ 23.  In 1999, Repsol acquired a

controlling share of the capital stock of YPF.  *Id.* ¶ 27.  According to Repsol, as of December

31, 2011, it owned 57.43% of YPF's capital stock.  *Id*. at ¶ 28.

On April 16, 2012, the Argentine government announced that it intended to renationalize

YPF.  *Id.* ¶ 42.  On May 3, 2012, the Argentine Congress passed Law 26,741, which (among

other things) expropriated Repsol's interest in YPF.  *Id.* ¶ 42.  The law makes clear that this

expropriation "is conducted for the public interest" and is specifically intended to achieve the

objectives set forth in the act.  Margolis Decl., Ex. B at Article X.  In particular, Law 26,741

declares as its objectives: "self-sufficiency in oil and exploration, exploitation, processing,

transportation and marketing of hydrocarbons" as well as "economic development with social

equity, job creation, increased competitiveness" and "sustainable growth of the provinces and

regions."  *Id*. at Article I.

To achieve these objectives, the act creates a regulatory authority charged with

overseeing national hydrocarbon policy within Argentina, which policy is spelled out in detail in

the act.  *Id.* at Articles III and IV.  The act also re-nationalizes YPF by expropriating 51% of the

shares of YPF that were held (directly or indirectly) by Repsol, and turning them over to the

national government (51%) and the provinces (49%).  *Id.* at Articles VII and VII.  The price of

the expropriated shares "shall be determined in accordance with the provisions of Law No.

21,499, Article 10 and the corresponding provisions," with an appraisal conducted by the National Court of Appraisal.  *Id.* at Article XII.  To ensure operational continuity of YPF, the act also provides that "the National Executive Office, through the persons or organizations it appoints, shall exercise all of the rights conferred upon the shares," and that the National Executive Office and designated Intervenor "are empowered to adopt all actions and precautions as necessary" to ensure operation of the company.  *Id.* at Articles XIII and XIV.  Subsequent to the enactment of the law, Argentina exercised the rights obtained through the expropriation to appoint managers to run YPF.  Compl. ¶ 42.

Prior to the expropriation, Chevron Argentina had engaged in negotiations with YPF concerning certain energy assets based in Argentina ("Energy Assets").[4]  Compl. ¶ 4.  That dialogue continued after the expropriation was consummated.  In September 2012, Chevron Argentina entered into a Memorandum of Understanding ("MOU") with YPF concerning the Energy Assets.  *Id.* at ¶ 55.  Chevron Corp. is not a party to the MOU.

On December 4, 2012, Repsol filed suit against Chevron Corp., seeking: (1) a declaration that, because of the allegedly invalid expropriation, YPF did not have the authority to enter into the MOU; (2) an injunction prohibiting Chevron Corp. from doing business with YPF so long as YPF remains under the control of the Argentine government; and (3) monetary damages allegedly incurred as a result of the Argentine government's purportedly invalid expropriation of Repsol's interest in YPF, which Chevron Corp. is allegedly "facilitating" as a result of the MOU between YPF and Chevron Argentina. Compl. ¶¶ 64-101.

_____

[4] Chevron Argentina is an entity organized under the laws of Argentina and located in Buenos Aires, Argentina.  It is a separate legal entity from Chevron Corp., the sole defendant in this action.

## ARGUMENT

## REPSOL'S CLAIMS ARE NON-JUSTICIABLE UNDER THE ACT OF STATE DOCTRINE

Repsol's Complaint is barred by the act of state doctrine.[5]  The act of state doctrine is a rule of abstention that prohibits a federal court from deciding cases that question the legality of actions by foreign governments within their own territories.  Under this well-established doctrine, a federal court in the United States must dismiss an action where: (1) there is an "official act of a foreign sovereign performed within its own territory," and (2) the relief sought or the defense interposed in the action would require the court to declare invalid the foreign sovereign's official act.  *See W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964).  The validity of the foreign state's act may not be examined even where the complaint alleges that the act violates international law or the foreign state's own laws.  *See Konowaloff*, 2012 WL 6573898, at *6.

As detailed below, the act of state doctrine precludes Repsol's claims against Chevron. Repsol's entire Complaint is premised on the allegation that an official state act performed by the Argentine government in Argentina – the expropriation of Repsol's interest in the Argentine oil company YPF – was illegal.  Compl. ¶ 1 ("Argentina's expropriation of Repsol's majority interest in YPF violates the Company's bylaws, Argentina law, and international law."); *see also*

---

[5] Although the act of state doctrine is properly raised as an affirmative defense, the Second Circuit has held that a court "may properly grant a motion to dismiss on the basis of [the act of state] doctrine when its applicability is shown on the face of the complaint." *Konowaloff v. Metropolitan Museum of Art, New York, N.Y.*, 11-4338-cv, 2012 WL 6573898, at *6 (2d Cir. Dec. 18, 2012).  As discussed further below, the Court needs to look no further than the allegations in Repsol's Complaint to confirm the applicability of the doctrine to this action.

Compl. ¶¶ 5-9, 44, 48-49, 65, 71, 83, 92, 101.  Repsol's allegations as to the purported

impropriety of Argentina's expropriation of YPF permeate the Complaint, which ultimately asks

the Court to declare agreements entered into by the Argentine government-appointed managers

of YPF void and otherwise prohibit dealings with the YPF as long as it continues to be in the

control of Argentine government-appointed managers.  In fact, by commencing its arbitration

against the Argentina under the Argentina-Spain Bi-lateral Treaty, Repsol necessarily concedes

that the takeover of YPF was the result of an act of state.  Simply stated, Repsol's claims cannot

be divorced from the expropriation, and the Court necessarily must address the alleged invalidity

of the expropriation in order to determine these claims.  Under such circumstances, the act of

state doctrine requires dismissal.

### A.    Argentina's Expropriation of Repsol's Shares Constitutes an "Official Act of a Foreign Sovereign Performed within its own Territory"

The Second Circuit has made clear that actions requiring an examination of the validity

of expropriations by foreign governments fall squarely within the act of state doctrine:  "Under

the act of state doctrine, the courts of the United States, whether state or federal, 'will not

examine the validity of a taking of property within its own territory by a foreign sovereign

government….'"  *Konowaloff*, 2012 WL 6573898, at *5 (holding that claims regarding

ownership of art confiscated by the Soviet government were non-justiciable) (emphasis omitted)

(quoting *Sabbatino*, 376 U.S. at 428); *see also Ricaud v. Am. Metal Co.,* 246 U.S. 304, 310

(1918) (court will not hear case where the property at issue was seized by the legitimate

government of Mexico under "the rule of law that the act within its own boundaries of one

sovereign state cannot become the subject of re-examination and modification in the courts of

another").  Indeed, courts have described a foreign government's seizure of assets within its

borders as the "paradigmatic setting" for which the act of state doctrine was designed. *Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203, 206 (D.C. Cir. 1987) (holding that appellants' claims "present a prime case for invocation of the doctrine" where those claims "invite examination of the validity of a taking by a foreign state of real property located within its own territory."). This case is no different.

1. <u>The Challenged Expropriation Plainly was an "Act of State"</u>

There can be no question that Argentina's seizure of Repsol's interest in YPF was an "official act of a foreign sovereign." *W.S. Kirkpatrick & Co.*, 493 U.S. at 405. As Repsol acknowledges in its Complaint, Argentina's take-over of YPF was effectuated by an "expropriation act" passed by the Argentine Congress on May 3, 2012. Compl. ¶ 42. This "expropriation act" (a) declared that a 51% majority stake in YPF was "in the public interest," (b) effected the immediate seizure by the government of all political and economic rights associated with 51% of YPF's shares owned by Repsol, and (c) decreed that the 51% majority stake in the Company owned by Repsol would become the property of Argentina and its provinces. *Id.*; Margolis Decl., Ex. B at Article VII. The act sets forth how the price of the expropriated shares will be determined, and institutes measures intended to insure that YPF continues to operate smoothly and without interruption, including empowering the National Executive Office and designated Intervenor "to adopt all actions and precautions as necessary" to ensure operation of the company. Margolis Decl., Ex. B at Articles XII and XIV. The act specifically contemplates "the dismissal of all the directors and alternate members, trustees and their alternates, and [the] appoint[ment of] replacements for the applicable term." *Id.* at Article XIII.

The legislation makes clear that authorizing Argentina to appropriate Repsol's interest and resume control over the appointment of YPF's management is part of a broad public policy initiative aimed at securing Argentina's "Hydrocarbon Sovereignty." *Id*. at Title I. Specifically, the act explicitly states that the authorized expropriation "is conducted for the public interest" and is intended to ensure that Argentina achieves self-sufficiency in the exploration and exploitation of hydrocarbons "with the goal of guaranteeing socially equitable economic development, the creation of jobs, the increase of the competitiveness of various economic sectors and the equitable and sustainable growth of the provinces and regions." *Id*. at Articles I and X. To that end, the act sets forth "principles of the hydrocarbon policy of the Republic of Argentina" and creates a regulatory authority charged with overseeing the implementation of this policy. *Id.* at Articles III and XIV. The passing of such a "public order law" clearly constitutes an official act of the Argentine sovereign authority for the purposes of the act of state doctrine. *Id*. at Article XVIII; *see also World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165-66 (D.C. Cir. 2002) (affirming dismissal under act of state doctrine where claims related to Kazakhstan's failure to issue a license permitting the removal of uranium, noting that questioning a foreign state's policies regarding resource development and export controls "would both disrupt international comity and interfere with the conduct of foreign relations by the Executive Branch"); *MOL, Inc. v. Republic of Bangladesh*, 736 F.2d 1326, 1329 (9th Cir. 1984) (a foreign state's right to regulate its natural resources is "a uniquely sovereign function").

    2. <u>Argentina's Expropriation of the YPF Shares was within its own Territory</u>

Nor can it be disputed that the expropriation took place "within [Argentina's] own territory." *W.S. Kirkpatrick & Co.*, 493 U.S. at 405. By virtue of a legislative act passed by its congress, the Argentine government seized shares of YPF – a company incorporated under

-9-

Argentine law, with employees, facilities and assets located within Argentina.  *See* Compl. ¶ 42; *see also* Margolis Decl., Ex. B at Art. 18 ("This law is a public order law and shall enter into force upon its publication in the Official Gazette.").  Such circumstances make clear that the expropriation took place within Argentina.  *See, e.g., Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 224 (2d Cir. 1985) (in the context of a debt obligation, holding that situs of the expropriation depends on whether the seizure "was able to come to complete fruition within the dominion of the [foreign] government") (internal quotation marks omitted).

The fact that derivatives of YPF shares trade on the NYSE does not alter the conclusion that the expropriation took place within Argentina.  In its Complaint, Repsol alleges that "a substantial portion [though not all] of the shares seized from Repsol were shares traded on the NYSE."  Compl. ¶ 43 (brackets added).  But this allegation – in addition to being inaccurate – has no bearing on the situs of the expropriation.  As an initial matter, Repsol itself acknowledges that YPF shares are not traded directly on the NYSE, but rather derivative securities instruments called ADS are traded on this exchange.  *Id.* ¶ 23.  Indeed, the securities filing referenced in Repsol's Complaint makes clear that the ADS offered by YPF were derivative instruments that represented an interest in YPF Class D shares, which in turn were held in Argentina.  *Id*. at 22; Margolis Decl., Ex. A at 1, 19, 90.[6]

In any event, even if a certain portion of the shares seized from Repsol could be said have been traded on the NYSE, this does nothing to change the fact that Argentina's expropriation of Repsol's shares took place in Argentina.  The case of *Ethiopian Spice Extraction Share*

---

[6] *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC.")

Co.("ESESCO") v. Kalamazoo Spice Extraction Co. ("Kal-Spice"), 543 F. Supp. 1224 (W.D.

Mich. 1982), *overruled on other grounds*, 729 F.2d 422 (6th Cir. 1984), is instructive.  In

*Ethiopian Spice*, the Ethiopian government had, through official act, expropriated a majority

interest in Kal-Spice's former subsidiary and thereby nationalized the company.  In determining

whether the act of state doctrine precluded Kal-Spice's claims relating to the expropriation, the

court rejected Kal-Spice's argument that because the shareholder and stock certificates were in

Michigan, the expropriation should be deemed to have taken place in the United States, rather

than in Ethiopia where the company was located and incorporated.[7]  In so holding, the court

wrote:

> [Kal-Spice] has presented no authority or reason to depart from the general rule
> that the situs of shares of stock is the place of incorporation. In accordance with
> that rule, the Court finds that the ESESCO shares had their situs in Ethiopia at the
> time of the taking, especially since it appears that all the physical assets of
> ESESCO for which the stock certificates are evidence of an ownership interest are
> also located in the place of incorporation, Ethiopia. The confiscation of ESESCO
> shares was thus "a taking of property within its own territory" by the [Ethiopian
> government] which is encompassed by the act of state doctrine.

*Id.* at 1232 (footnote omitted).[8]

As in *Ethiopian Spice*, the expropriated property in this case involves an interest in a

foreign corporation – specifically, Repsol's interest in YPF, a company that is incorporated

---

[7] Kal-Spice had filed counterclaims against ESESCO, as well as related claims against the
Ethiopian government.

[8] On appeal, the Sixth Circuit left untouched the ruling that the expropriation occurred in
Ethiopia, though the Circuit ultimately reversed on the ground that a "treaty exception" to the act
of state doctrine applied.  *Kalamazoo Spice Extraction Co. v. Provisional Military Gov't. of
Socialist Ethiopia*, 729 F.2d 422, 428 (6th Cir. 1984) (holding that applicable treaty between the
United States and Ethiopia set forth controlling legal standards governing the U.S. appellant's
claim).  No such exception applies here.

under Argentine law, based in Argentina with assets located in Argentina.  Accordingly, the situs of the expropriation was Argentina.

Indeed, Repsol has effectively conceded this fact by pursuing arbitration under Article V of the Argentina-Spain Bi-lateral Treaty.  While the Notice of Arbitration itself is not public, public reports have confirmed that Repsol is asserting in the arbitration that Argentina expropriated its shares of YPF by virtue of its legislative act.  *See* Margolis Decl., Ex. C (Financial Times article quoting a Repsol statement alleging that "Argentina has violated several rules of the treaty, starting with the obligation not to nationalise or expropriate Repsol's investments or subject them to equivalent measures.").  Repsol will thus be arguing before ICSID that Argentina's acts with respect to YPF's shares were a "nationalization, expropriation, or any other [similar] measure" that was "adopted by [Argentina] . . . ***in its territory***."  Margolis Decl., Ex. D at Art. V (emphasis added).  But Repsol cannot have it both ways; it cannot claim that Argentina expropriated its shares "in [Argentina's] territory" to seek recovery from Argentina under international law, while at the same time attempt to side-step the act of state doctrine to proceed in this forum.

For all of the reasons stated above, the expropriation of YPF shares challenged by Repsol must be found to have taken place in Argentina.

> **B.    Adjudication of Repsol's Claims Requires the Court to Rule on the Invalidity of Official Acts by the Argentine Government**
>
> > 1.    Repsol's Complaint is Based on the Alleged Invalidity of Argentina's Expropriation

Repsol's Complaint against Chevron Corp. is premised on the allegation – set forth in the very first paragraph and reiterated throughout – that Argentina's expropriation of Repsol's interest in YPF "violates the Company's bylaws, Argentina law, and international law . . . ."

Compl. ¶ 1.[9]  Moreover, each cause of action asserted by Repsol – in addition to expressly incorporating all prior allegations in the Complaint – is specifically predicated upon the alleged invalidity and illegality of Argentina's expropriation of Repsol's interest in YPF.  For example, Repsol's first claim for relief, which seeks a declaration that the MOU confers no rights on Chevron, is explicitly premised on the allegation that YPF's government-appointed managers "were appointed in contravention of the Company's bylaws and [thus] lack actual or apparent authority to take actions on the Company's behalf….".  *See* Compl. ¶¶ 65-66.  Yet these managers were appointed by the Argentine government pursuant to the rights and obligations conferred **by the expropriation act**.  *See supra*, pp. 4-5.  Determining that these managers were wrongfully appointed, therefore, is tantamount to deeming the expropriation act invalid or otherwise null and void – something the act of state doctrine does not permit.  So too with Repsol's second claim for relief, which seeks a permanent injunction restraining Chevron Corp. from dealing with YPF's Argentine government-appointed managers and which is premised on identical allegations as to the purported impropriety of Argentina's assumption of control of YPF.  *See* Compl. ¶¶ 71-72 (alleging that YPF's government-appointed managers lack authority to act on behalf of the company because these managers were wrongfully appointed).

---

[9] *See also, e.g.*, Compl. ¶ 5 (alleging that Argentina's expropriation of Repsol's shares constituted "misconduct"), ¶ 8 (alleging that the "manner in which Argentina seized control of the Company was a deliberate and blatant breach of the bylaws, Argentina law, and international law."), ¶ 44 (alleging that "[t]he seizure of Repsol's shares by Argentina was in direct violation of YPF's bylaws—as well as Argentina law and international law…."), ¶ 48 (alleging that "Argentina's expropriation of Repsol's shares in YPF…violated the Company's bylaws, including Sections 7 and 28, as well as various provisions of Argentine law and international law."), ¶ 49 (alleging that the managers appointed by the Argentine government "lack authority to direct the actions of YPF or act on its behalf.").

Repsol's remaining claims against Chevron Corp. are likewise based on the alleged illegality of the expropriation.  Repsol's third and fourth claims for relief assert that Chevron Corp. assisted or otherwise facilitated the allegedly *ultra vires* conduct of YPF's Argentine government-appointed managers.  These claims are expressly predicated on the allegation that Argentina's conduct pursuant to the expropriation act was unlawful.  Compl. ¶¶ 83-84 (alleging that the expropriation of Repsol's YPF shares by the Argentine government breached the Company's bylaws and that Chevron "procured and facilitated" these alleged breaches); Compl. ¶¶ 92-93 (alleging that the YPF government-appointed managers breached YPF's bylaws by exercising control over Repsol's majority stake and entering into the MOU with Chevron, and that Chevron Corp. "assisted" these purported breaches).  Repsol's fifth cause of action, for unjust enrichment, fares no better.  Compl. ¶ 101 (alleging that Argentina's expropriation violated YPF's bylaws and thus the MOU entered into by YPF's government-appointed managers is invalid).

In short, this Court must impugn the expropriation act if it is to rule in Repsol's favor.  Indeed, the relief sought by Repsol in the Complaint – including a declaration that the MOU between Chevron Argentina and YPF is void and an injunction precluding related business dealings with Argentine-controlled YPF – confirms that this action constitutes a collateral attempt by Repsol to invalidate Argentina's expropriation of Repsol's interest in YPF and effectively undo all that has happened as a result.  This is precisely what the act of state doctrine precludes.  *See W.S. Kirkpatrick & Co.*, 493 U.S. at 405 (act of state doctrine applies where "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory," such as

-14-

in cases where resolution "would have required declaring that [the foreign] government's prior seizure of the property, within its own territory, [was] legally ineffective.").

      2.  <u>Repsol's Attempt to Recast its Allegations as Contract-Based Cannot Save its Claims</u>

Repsol's references to tender offers and bylaw breaches and *ultra vires* conduct do nothing to detract from the fact that the Court cannot decide this matter without addressing the validity of Argentina's expropriation, thereby rendering this action impermissible under the act of state doctrine. *See W.S. Kirkpatrick & Co.*, 493 U.S. at 405. As discussed above, Repsol's Complaint asserts that YPF's current managers lack authority to take actions on the company's behalf – including but not limited to entering into the MOU with Chevron Argentina – because "in appointing YPF's current officers and directors, Argentina failed to make a tender offer in accordance with the Company's bylaws." *See, e.g.*, Compl. ¶¶ 66, 72. Stated another way, Repsol asserts that because Argentina acquired Repsol's controlling interest without providing compensation allegedly required by YPF's bylaws, Argentina failed to assume the rights that accompany the shares underlying that interest, including the right to appoint directors and officers. *Id.* at ¶ 99 ("Repsol is the rightful majority owner of YPF and, as a result, of the Company's interest in the Energy Assets—at least until such point that Argentina makes a tender offer for the Company's shares in accordance with the bylaws and compensates Repsol for its majority stake in the Company.").

But Repsol's suggestion that this Court should give primacy to YPF's bylaws cannot be done without passing on the validity of the expropriation law. As Repsol necessarily concedes, Argentina acquired Repsol's interest in YPF ***by virtue*** of legislation passed by the Argentine Congress expressly authorizing the expropriation. Compl. ¶ 42. While this legislation expressly

conveys all rights in the shares to Argentina, including the right to appoint officers and directors, nowhere in the legislation does it require Argentina to make a tender offer in order to acquire these rights.  Margolis Decl., Ex. B.  To the contrary, the expropriation act provides for a different mechanism and means to evaluate any compensation owed to Repsol.  *Id*. at Article XII.  Similarly, Repsol's claim that the Argentine government-appointed managers lack the authority to enter into the MOU squarely asks this Court to invalidate articles XIII and XIV of Argentina's Law 26,741, which expressly vests those managers with the authority to "adopt all actions" necessary to operate the company.  *Id*. at Articles XIII and XIV.

Under such circumstances, to find that a tender offer is mandated or that Argentina's right to appoint officers and directors is otherwise compromised, such that the government-appointed managers could be said to be acting *ultra vires*, necessarily would "require[]" the Court to hold that the expropriation act itself is invalid – something the act of state doctrine does not permit, regardless of how Repsol chooses to present its claims.  *W.S. Kirkpatrick,* 493 U.S. at 405; *see also First Nat'l Bank of Boston v. Banco Nacional De Cuba*, 658 F.2d 895, 901 (2d Cir. 1981) (holding that plaintiff's unjust enrichment claims were precluded by act of state doctrine, noting "no authority has been cited for the proposition that the act of state doctrine does not apply to a quasi-contractual claim based on unjust enrichment . . . . We may not avoid application of the act of state doctrine by simply compartmentalizing the expropriation and narrowing our sights to the precise injustice associated with the taking of a particular asset.) (internal quotations omitted); *Glen v. Club Méditerranée*, 450 F.3d 1251, 1254 (11th Cir. 2006) (holding that plaintiffs' claims for trespass and unjust enrichment were precluded by act of state doctrine where claims were predicated on plaintiffs' alleged continued ownership of the property seized by Cuba, noting "[t]he gravamen of Plaintiffs' Complaint is that the Cuban government

-16-

expropriated the Valdero property and that Plaintiffs have a right to sue [a third party, private defendant for] benefitting from the expropriation . . . . The validity of the Cuban government's act of expropriation is directly at issue in this litigation."); *World Wide Minerals*, 296 F.3d at 1166 (holding that plaintiff's claim that Kazakhstan breached a pledge agreement by transferring pledged shares in a state-owned company to itself was precluded by the act of state doctrine where "this transfer and alleged conversion were accomplished pursuant to an official decree" of Kazakhstan).

Indeed, Repsol cannot consistently assert that Argentina's acts are a mere breach of bylaws or anything other than a "public act[] of a recognized foreign sovereign power," *Sabbatino*, 376 U.S. at 401 (defining a non-justiciable "act of state"), for Repsol appears to be asserting just the opposite in order to state a claim before ICSID.  *See, e.g., Waste Mgmt. Inc. v. United Mexican States,* ICSID Case No. ARB/00/3, Award, Apr. 30, 2004, para. 74 (to state a claim for expropriation, "showing . . . a breach of contract is not enough"); *see also id.* para. 174 ("The mere non-performance of a contractual obligation is not . . . tantamount to expropriation. Any private party can fail to perform its contracts, whereas nationalization and expropriation are inherently governmental acts.")*; Impregilo S.p.A. v. Pakistan,* ICSID Case No. ARB/03/3, Decision on Jurisdiction, April 22, 2005, para. 260 ("In order that the alleged breach of contract may constitute a violation of the BIT, it must be the result of behaviour going beyond that which an ordinary contracting party could adopt.  Only the State in the exercise of its sovereign authority ('*puissance publique*'), and not as a contracting party, may breach the obligations assumed under the BIT.").

In sum, the alleged invalidity of Argentina's expropriation of Repsol's interest in YPF is the heart of Repsol's Complaint that beats behind each and every claim.  Because Repsol's

claims cannot be resolved without determining the validity of Argentina's seizure of Repsol's shares – an act that was effectuated through the passage of legislation by the Argentine Congress – the act of state doctrine bars this Court's consideration of Repsol's claims.

## CONCLUSION

For the foregoing reasons, Chevron Corp. respectfully requests that the Court grant its motion to dismiss Repsol's Complaint in its entirety.

Dated: January 25, 2013
      New York, New York

                                    Respectfully submitted,

                                    WILSON SONSINI GOODRICH & ROSATI, P.C.

                                    By: <u>s/ Michael S. Sommer</u>
                                    Michael S. Sommer
                                    Jessica L. Margolis
                                    Lucy Yen
                                    1301 Avenue of the Americas, 40th Floor
                                    New York, New York 10019
                                    Tel: (212) 999-5800

                                    David J. Berger
                                    650 Page Mill Road
                                    Palo Alto, CA 94304-1050
                                    Tel: (650) 493-9300

                                    *Attorneys for Defendant Chevron Corporation*